UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CLARENCE DELANEY, JR.,

                  Plaintiff,

    -against-                                    1:12-cv-1575 (LEK/RFT)

CITY OF ALBANY; ADAM
MANTEI, individually and as City of
Albany Police Officer; and POLICE
OFFICER MAIORIELLO, individually
and as City of Albany Police Officer,

                  Defendants.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

Before the Court is Defendants Police Officer Adam Mantei; Police Officer Maioriello (together, the "Individual Defendants"); and City of Albany's ("City") (collectively, "Defendants") Motion for failure to state a claim and for judgment on the pleadings and attached memorandum of law. Dkt. Nos. 23 ("Motion"); 23-11 ("Memorandum"). Plaintiff Clarence Delaney, Jr. ("Plaintiff") filed a Complaint—which he later amended—asserting causes of action for false arrest; excessive force; illegal search and seizure; failure to train and supervise officers; "loss of life, liberty, and property"; as well as common-law assault. Dkt. Nos. 1 ("Complaint"); 20 ("Amended Complaint"). Defendants filed an Answer and their Motion. Dkt. No. 21 ("Answer"); Mot. Plaintiff submitted a Response brief, and Defendants a Reply. Dkt. Nos. 32 ("Response"); 33 ("Reply"). For the following reasons, Defendants' Motion is granted in part.

**II. BACKGROUND**[1]

In November 2011, Plaintiff was walking home on Clinton Avenue in Albany. Am. Compl. at 4. Plaintiff walked past the scene of a car accident and continued toward his home. Id. Defendant Mantei responded to the accident, saw Plaintiff about halfway down the block, and yelled to Plaintiff, "who was driving this car?" Id. Defendant Mantei then told Plaintiff to "come here now." Id. at 5. Plaintiff continued to walk away from Defendant Mantei, who chased Plaintiff and threw him to the ground. Id. Other police officers, including Defendant Maioriello, responded to the accident. Id. The Individual Defendants dragged Plaintiff on the sidewalk, removed Plaintiff's pants, and forced Plaintiff to remain on the sidewalk pantless for about thirty minutes. Id. Plaintiff sustained bruises to his knees and an injury to his already-disabled right arm. Id. The Individual Defendants refused Plaintiff's requests for medical treatment for his injuries. Id. At the police station "booking," police searched Plaintiff's belongings and found a credit card and New York State benefits card, both of which had been previously reported stolen. See Dkt. No. 23-8 ("Police Reports").[2] Police added criminal possession of stolen property charges against Plaintiff, to which he later pled guilty, while charges related to the accident were not pursued. See Resp. at 7.

---

[1] The Court accepts the Plaintiff's factual allegations as true in a Rule 12(b)(6) motion for failure to state a claim. See Tellabs, Inc. v. Makor Issues & Rights, Inc., 551 U.S. 308, 309 (2007). The standard for a Rule 12(c) motion is the same. See In re Thelen, 736 F.3d 213, 218 (2d Cir. 2013). Thus, the allegations in the Amended Complaint form the sole basis for this section.

[2] The Court judicially notices the Police Reports for the limited purpose of determining that Plaintiff pled guilty to a charge that did not directly result from his initial arrest. The Police Reports are not otherwise judicially noticeable. See Pina v. Henderson, 752 F.2d 47, 50 (recognizing that judicial notice is appropriate not for issues "critical . . . to the ultimate disposition of the case," but for matters "beyond controversy").

**III.     STANDARD OF REVIEW**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6).  A court must accept as true the factual allegations contained in a complaint and draw all inferences in a plaintiff's favor.  See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]."  Id. at 556.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id. (citing Twombly, 550 U.S. at 555).  Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal.  See id. at 678-79.

A motion brought under Rule 12(c) is similar to a 12(b)(6) motion, except that it is brought after the close of the pleadings, implicating the pleadings as a whole.  See 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, § 1367 (3d ed. 2013).  The Rule 12(c) motion attempts to resolve claims based solely upon agreed-upon facts and issues of law, and includes judicially noticed materials.  See In re Thelen, 736 F.3d 213, 218 (2d Cir. 2013).

**IV. DISCUSSION**

Defendants make several arguments in support of the dismissal of Plaintiff's claims: (1) Plaintiff's guilty plea prevents him from now arguing that the Individual Defendants' seizure, search, and arrest of Plaintiff were unconstitutional; (2) Plaintiff pled only a *de minimis* use of force by the officers; (3) Plaintiffs' allegations, considered as a whole, do not meet the standard for municipal liability; (4) the Individual Defendants are entitled to qualified immunity; (5) Plaintiff's claim for common-law assault does not comply with state jurisdictional requirements.

**A. False Arrest and Illegal Search and Seizure**

A § 1983 plaintiff cannot bring a civil suit that "necessarily impl[ies] the invalidity of his conviction or sentence" until she has succeeded in overturning that conviction through direct appeal or a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477, 487 (1994). In general, a guilty plea is equivalent to a conviction on the underlying charge to which the criminal defendant pleads guilty. Saddler v. United States, 531 F.2d 83, 85 (2d Cir. 1976). A false arrest claim "derives from [the] Fourth Amendment right to remain free from unreasonable seizures." Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006).

Heck rested upon the premise that "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983." Heck, 512 U.S. at 482 (quoting Preiser v. Rodriguez, 411 U.S. 475, 490 (1973)). Heck bars all § 1983 actions that would necessarily implicate the validity of the plaintiff's conviction, regardless of the relief sought. Heck, 512 U.S. at 483. However, Heck test does not apply to all issues surrounding search, seizure, and arrest. See Mem. at 11. For example, the Supreme Court contemplated that an

unlawful search and seizure could be challenged in a § 1983 action if the fruits of that search could have been lawfully discovered under the independent source and inevitable discovery doctrines. See Heck, 512 U.S. at 487 n.7.

The Court must determine whether the validity of Plaintiff's seizure and arrest necessarily implicates his guilty plea and resulting conviction. "In a case where the *only* evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from use of that evidence." Covington v. City of N.Y., 171 F.3d 117, 123 (2d Cir. 1999). Here, Plaintiff pled guilty to criminal possession of a stolen credit card. Plaintiff states that this credit card was not discovered exactly at the time of his initial arrest. See Resp. at 7. Rather, the card was found—ostensibly pursuant to a search to inventory Plaintiff's personal property—later that night. See Police Reports.

However, because the police inventory search revealing the stolen credit card would only have been valid if the underlying arrest were valid, see, e.g., Illinois v. Lafayette, 462 U.S. 640, 643 (1983) (narrowing discussion of the scope and legality of inventory searches to those "person[s] under lawful arrest"), Plaintiff cannot in any regard challenge the underlying arrest stemming from his putative involvement in the car accident as unlawful without also invalidating the inventory search. Similarly, Plaintiff cannot challenge the search incident to arrest, even though police did not discover the credit card in that search, because Plaintiff would need to prove that the arrest was unlawful as a necessary element. As a result, Plaintiff's claim for false arrest is Heck barred until such time as Plaintiff successfully challenges his conviction.[3] The Court accordingly dismisses that

---

[3] The limitations period for the false arrest claim is tolled until Plaintiff successfully challenges his conviction. See Heck, 512 U.S. at 489-90. Thus, if Plaintiff succeeds in his pending state court action or subsequent federal habeas petition, he may then promptly file suit for the false

5

claim without prejudice.

**B. Excessive Force**

Defendants next argue that their *de minimis* use of force was objectively reasonable. "Claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' . . . are analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989). There is no excessive force where, "accepting all of the allegations as true, it is clear that the force used by the officers was objectively reasonable under the circumstances." Messina v. Mazzeo, 854 F. Supp. 116, 128-29 (E.D.N.Y. 1994). The test weighs the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Conner 490 U.S. 386, 396 (1989). A *de minimis* use of force, without an alleged injury "will rarely suffice to state a constitutional claim"; Plaintiff must plead both force and injury. Roman v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).

Defendants cite cases in which injury was alleged without force, see Mem. at 13; Betts v. Shearman, No. 12 Civ. 3195, 2013 WL 2946369, at *11 (S.D.N.Y. Jan. 24, 2013); Wims v. N.Y. City Police Dep't, 10 Civ. 6128, 2011 WL 2946369, at *4 (S.D.N.Y. July 20, 2011), and in which force was alleged without specified injury, see Mem. at 13; Guerrero v. City of N.Y., 12 Civ. 2916, 2013 WL 673872, at *5 (S.D.N.Y. Feb. 25, 2013); Acosta v. City of N.Y., 11 Civ. 856, 2012 WL 1506954, at *10-11 (S.D.N.Y. Apr. 26, 2012). These cases are inapposite, because Plaintiff cites both a particular use of force—the tackling, dragging, and removal of Plaintiff's pants—and a particular injury—cuts and scrapes, as well as the aggravation of his already-disabled arm. Taking

---

arrest claim without facing statute-of-limitations issues.

Plaintiff's allegation that he was not involved in the accident as true, it was not objectively reasonable for the Individual Defendants to seize Plaintiff by tackling him.[4] Although probable cause for a drunk driving arrest may exist where it is reasonable to suspect that the Plaintiff was drunk, see Frank v. Police Dep't of City of Eunice, 244 F.3d 137, 137 (5th Cir. 2000) (finding probable cause for arresting man that was lying near the scene of an car accident and appeared intoxicated), the Court cannot draw such an inference at the motion to dismiss stage.

Defendants argue that the Police Reports establish that the Individual Defendants' conduct was objectively reasonable. This argument misconstrues the scope and effect of judicial notice. In reviewing a 12(c) motion, the Court accepts all of a plaintiff's factual allegations as true, and resolves all inferences in his favor. In re Thelen, 736 F.3d at 218. The Court cannot take judicial notice of a police report for the purpose of establishing the truth of the allegations therein. See, e.g., Gordon v. City of N.Y., No. 10-cv-5148, 2012 WL 1068023, at *6 (E.D.N.Y. March 29, 2012).

Neither do the Individual Defendants' allegations establish a qualified immunity defense. Qualified immunity is an affirmative defense. Lee v. Sandberg, 136 F.3d 94, 101 (2d Cir. 1997). "The doctrine of qualified immunity entitles public officials to freedom from suit for acts undertaken in their official capacity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe that their acts did not violate those rights." Martinez v. Simonetti, 202 F.3d 625, 633-34 (2d Cir. 2000). Significant emphasis should be placed on whether or not the legality of the act is governed by controlling

---

[4] Because a factfinder need not make any findings on whether the Individual Defendants had probable cause to arrest Plaintiff, allowing her to consider whether probable cause existed as one factor in determining whether the level of force was objectively reasonable does not "necessarily implicate the validity of Plaintiff's confinement."

7

Circuit precedent. See Richardson v. Selsky, 5 F.3d 616, 623 (2d Cir. 1993). On a Rule 12 motion, the Court must resolve *all* factual inferences in a plaintiff's favor—"not only those that support his claim, but also those that defeat the immunity defense." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004). Therefore, "[g]iven the factual nature of this qualified immunity inquiry, . . . it is rarely appropriate to recognize the defense on a motion to dismiss." Meserole St. Recycling, Inc. v. City of N.Y., No. 06 Civ. 1773, 2007 WL 18679, at *8 (S.D.N.Y. Jan. 23, 2007).

In the Second Circuit, "[i]t is beyond dispute that the right to be free from excessive force has long been clearly established." Green v. Montgomery, 219 F.3d 52, 59 (2d Cir. 2000). Furthermore, the Court established above that Defendants have not properly proved their conduct "objectively reasonable." Thus, the Court cannot grant qualified immunity at this stage, and Plaintiff's claim for excessive force may proceed.

### C. Monell Claims

A municipal government may be sued under 42 U.S.C. § 1983 if the practices of its officials rise to the level of a "custom or usage" that is attributable to the municipality. See Monell, 436 U.S. 658, 691 (1978); 42 U.S.C. § 1983. Inadequate police training can serve as a basis for a Monell claim "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). In the Second Circuit, failure-to-train claims face a high bar:

> The plaintiff must show that a policymaker knows 'to a moral certainty' that her employees will confront a given situation . . . . Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training will make less difficult or that there is a history of employees mishandling the situation . . . . Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

8

Walker v. City of N.Y., 974 F.2d 293, 297-98 (2d Cir. 1992). Plaintiff alleges that, because he previously filed an action for Fourth Amendment violations against the City, he has sufficiently established a failure-to-train claim. See Am. Compl. at 6-7; Resp. at 15-16. Plaintiff further asserts that "the City of Albany has had numerous complaints by citizens of this nature in the past decade." Resp. at 15.

Plaintiff has not set forth specific allegations that tie the alleged misconduct to a failure to train. Prior to the Court's clarification of the pleading standard in Twombly and Iqbal, the Second Circuit stated as dictum that a plaintiff would be "unlikely [to] have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation." Amnesty America v. Town of West Hartford, 361 F.3d 113, 130 n.10 (2d Cir. 2004). However, several courts have declined to follow Amnesty America in light of the Supreme Court's clarification of the Rule 8 standard, requiring instead some direct proof that the municipality's training programs are deficient. See, e.g., Triano v. Town of Harrison, 895 F. Supp. 2d 526, 539-40 (S.D.N.Y. 2012); Gauthier v. Kirkpatrick, No. 13-cv-187, 2013 WL 6407716, at *10 (D.Vt. Dec. 9, 2013); Miller v. Cnty. of Monroe, No. 11-cv-6219, 2013 WL 2180738, at *8 (W.D.N.Y. May 17, 2013); Simms v. City of N.Y., No. 10-cv-3420, 2011 WL 4543051, at *2 n. 3 (E.D.N.Y. Sep. 28, 2011).

Following the consensus in the Circuit, the two instances of alleged misconduct with respect to Plaintiff's Fourth Amendment rights are not enough to give rise to an inference of deliberate indifference by the City of Albany because Plaintiff has not alleged any facts to show that the City's

9

training is deficient.[5] The Court dismisses this claim without prejudice.

**D. Common-Law Assault**

Under New York law, certain tort claims against municipalities are permissible only upon proper service of a notice of claim. See N.Y. GEN. MUN. LAW § 50-i(1). Notices of claim must be served within 90 days of the date that the claim accrued. See id. § 50-e(1). Courts have discretion to grant requests to file late notices of claim only up to the statute of limitations period—one year and ninety days from the accrual of the claim—including after commencement of an action if it falls within the limitations period. Pierson v. City of N.Y., 56 N.Y.2d 950, 954-55 (N.Y. 1982). Requesting leave to file a late claim is necessary once the appropriate period has passed. N.Y. GEN. MUN. LAW § 50-e(5). Claims for assault accrue on the date of the assault. McElveen v. Police Dep't of the City of N.Y., 418 N.Y.S.2d 49, 50 (App. Div. 1979).

Plaintiff's detention did not toll the filing period. Therefore, Plaintiff's notice was filed outside of the statutory period. See Resp. at 17 ("Plaintiff sent a notice of intent to file a claim . . . two days before he was due to be sentenced on October 18, 2012"); Am. Compl. at 4 (stating that the putative assault occurred in November of 2011). Plaintiff has not moved the Court for permission to serve a late notice of claim and, even construing Plaintiff's Response as a motion for leave to file late notice of claim, that request would be outside the limitations period. See Resp. Therefore, the Court must dismiss Plaintiff's claims for assault against the City, see Grullon v. City

---

[5] The Court acknowledges that pleading a Monell failure-to-train claim under the modern interpretation of Rule 8 is a daunting task. Indeed, it appears difficult for a private citizen to distinguish between unlawful police action in contravention of established policy, and unlawful police action pursuant to established policy at the time of pleading.

10

of N.Y., 635 N.Y.S.2d 24, 25 (App. Div. 1995), and against the individual police officers in their official capacities, see N.Y. GEN. MUN. LAW 50-j.

However, whether the notice of claim requirement applies to the Individual Defendants in their individual capacities is more complicated. A notice of claim must be served on the municipal employee only if the municipality has a statutory duty to indemnify the officer for the putative violation. See Grays v. City of New Rochelle, 354 F. Supp. 2d 323, 327 (S.D.N.Y. 2005); D'Angelo v. City of N.Y., 929 F. Supp. 129, 135 (S.D.N.Y. 1996). Defendants have made no claim that a specific statutory provision indemnifies the Individual Defendants; therefore, the Court must examine N.Y. General Municipal Law 50-j in order to determine if municipalities indemnify the Individual Defendants' conduct here. The City must "assume the liability . . . any duly appointed police officer . . . for any negligent act or tort," while the officer "acts in the performance of his duties and within the scope of his employment." N.Y. GEN. MUN. LAW 50-j. A law enforcement defendant acts within the scope of his employment when he is "engaged in the immediate and actual performance of a public duty imposed by law and such public duty performed was for the benefit of the citizens of the community." Id. Courts have previously interpreted the putative intentional torts of police officers in furtherance of making an arrest as being within the scope of employment. See LaGrange v. Ryan, 142 F. Supp. 2d 287, 295-96 (N.D.N.Y. 2001). Here, because the alleged tort occurred in the process of law enforcement, specifically making an arrest, the statute would require indemnity. Therefore, the Court must also dismiss the assault claim as to the Individual Defendants in their individual capacities.

## V.     CONCLUSION

Accordingly, it is hereby:

11

**ORDERED**, that Defendant's Motion (Dkt. No. 23) to dismiss and for judgment on the pleadings is **GRANTED in part** and **DENIED in part**. Plaintiff's claims for failure to train police officers, false arrest and illegal search and seizure, and emotional distress are **DISMISSED without prejudice**. Plaintiff's claim for assault (Am. Compl. ¶ 7g) is **DISMISSED with prejudice**; and it is further

**ORDERED**, that Defendant City of Albany is **DISMISSED** from this action;

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: February 24, 2014
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge